UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

YULEIMA MERINO DIAZ,                                                    Petitioner,

v.                                                          Civil Action No. 4:26-cv-14-RGJ

JASON WOOSLEY, et al.,                                                  Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Yuleima Merino Diaz's Writ of Habeas Corpus. [DE 1]. Respondents responded on January 21, 2026. [DE 9]. Petitioner replied on January 23, 2026. [DE 11]. The parties agreed that no evidentiary hearing is necessary. [DE 8; DE 10]. This matter is ripe for adjudication. For the reasons below, this Court **GRANTS** the Petition for Writ of Habeas Corpus. [DE 1].

**I.      Background**

Yuleima Merino Diaz ("Diaz") is a 39-year-old native and citizen of Colombia. [DE 1 at 4]. She re-entered the United States on October 13, 2023. [*Id*.]. Upon her re-entry, she was arrested and convicted of criminal trespass. [*Id*.]. She was sentenced to 17 days in jail and then promptly transferred to the custody of the Department of Homeland Security ("DHS"). [*Id*.]. Diaz has remained in custody at Grayson County Jail, in the Western District of Kentucky, awaiting removal, since October 31, 2023. [*Id*.].

During her detention, Diaz was placed in withholding only proceedings after an asylum officer found Diaz to have a reasonable fear of persecution or torture if sent back to her home country. [*Id*.]. On August 20, 2024, Diaz was found to be mentally incompetent by an Immigration Judge ("IJ") and her counsel was appointed as her qualified representative and guardian. [*Id*. at 5]. Then, on April 8, 2025, an IJ granted Diaz Withholding of Removal and Diaz's order of removal became administratively final. [*Id*.]. Throughout her detention, Diaz has requested multiple

custody reviews and has either received a rejection in English, which she does not speak, or no answer. [*Id*.]. Throughout her time in detention, Diaz has been transferred multiple times between the jurisdiction of the Louisiana Immigration and Customs Enforcement ("ICE") Field Office and Chicago ICE Field Office, typically without her prior knowledge. [*Id*.]. Diaz filed a Petition with this Court on January 12, 2026, while she was detained at Grayson County Jail, asserting a violation of the due process clause for her prolonged detention. [*Id*. at 5-6].

After Diaz was granted withholding of removal, Respondents attempted to remove Diaz to Mexico. [DE 18 at 68]. Diaz requested a Reasonable Fear Interview, which was denied without notice to counsel. [*Id*.]. After DHS determined that Mexico was no longer a viable option for Diaz, Respondents notified the Court, and Diaz, that she is to be removed "within the next few days" to the Democratic Republic of the Congo ("DRC") "pursuant to the Third Country Removal Agreement." [DE 17 at 64]. Diaz again requested a Reasonable Fear Interview out of being harmed or killed in the DRC. [DE 18 at 68]. Respondents denied this request. [*Id*.]. In the denial, Respondents stated that "DHS has received assurances from [DRC] that Petitioner's life or freedom will not be threatened." And that because "the Department of State determined that these diplomatic assurances were credible" Diaz may be removed to the DRC without any further notice or hearing. [*Id*.].

After being notified of Diaz's impending removal to DRC, Diaz filed an Emergency Temporary Restraining Order ("TRO") to "return Petitioner to Kentucky," to "not remove Petitioner to DRC, and to follow the procedures outlined in the [applicable] statute[s] and regulations." [DE 18 at 75]. The Court granted Diaz's TRO on April 16, 2026. [DE 20]. The Court held that Diaz had demonstrated likelihood of success on the merits that Respondents had violated Diaz's due process rights in her removal to the DRC. [*Id*. at 97]. Respondents complied with the TRO. [DE 21]. Diaz seeks a Writ of Habeas Corpus alleging that her current detention is in

2

violation of *Zadvydas v. Davis*, 533 U.S. 690 (2001). [DE 1 at 6]. The United States contends that Diaz is properly detained under 8 U.S.C. § 1231 pursuant to the *Zadvydas* standard. [DE 9 at 37-39]. As of today, Diaz has been in detention for over 31 months. [DE 1 at 1].

## II.    Discussion

### A.    Relevant Immigration Framework

8 U.S.C. § 1231 controls the detention of non-citizens "during" and "beyond" "removal." 8 U.S.C. § 1231(a)(2)-(6). The "removal period" begins once a noncitizen's removal order "becomes administratively final." 8 U.S.C. § 123l(a)(l)(B). The removal period lasts for 90 days, during which ICE "shall remove the [non-citizen] from the United States." And ICE "shall detain the [non-citizen]" as it carries out the removal. 8 U.S.C. § 1231(a)(l)-(2). After the initial 90-day detention period, a noncitizen "ordered removed. . . as inadmissible under section 1182 of this title. . . may be detained beyond the removal period" or "released" subject to terms of supervision. 8 U.S.C. § 1231(a)(6); *Zadvydas*, 533 U.S. at 683. For post-removal detention to be permissible, the removal must be reasonably foreseeable. *Id.* at 699. What constitutes reasonable foreseeability is determined using a case-by-case inquiry, with no specific point in time where the detention becomes constitutionally impermissible. *Id.* However, the Supreme Court held that a period of detention under six months is a "presumptively reasonable period of detention." *Id.* at 701. This does not mean that any detention longer than six months is unreasonable. *Id.* After six months, the detention of the noncitizen may continue to be constitutionally permissible according to a burden shifting framework. *Id.* First, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If this is met, the burden shifts to the United States. The United States must "respond with evidence sufficient to rebut that showing." *Id.* "And as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' necessarily shrinks." *Lopez v. Raycraft,* 2026 WL 1370583,

at *12 (E.D. Mich. May 15, 2026) (quoting *Zadvydas,* 533 U.S. at 701). "Said differently: A person with a final removal order 'may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.*

**B.      Application to Diaz**

Diaz has been in detention since October 31, 2023. [DE 1 at 5]. Diaz's order of removal became final on April 8, 2025, triggering the start of her *Zadvydas* period. [*Id.*]. The United States concedes that her detention has passed the six months period for a presumption of reasonableness. [DE 9 at 38]. Still, this does not automatically permit Diaz's release. The Supreme Court stated the "6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "[S]uccessful petitioners under the *Zadvydas* framework prototypically include persons whom the government is 'unable to remove'" *Euceda v. Evans,* 2017 WL 1534197, at *4 (E.D. Va. Apr. 24, 2017) (quoting *Zadvydas,* 533 U.S. at 695). It also includes persons who are "left in [a] removable-but-unremovable limbo." *Jama v. Immigr. Customs Enf't,* 543 U.S. 335, 347 (2005). According to the burden shifting framework, the initial burden is on Diaz to demonstrate that she has "good reason to believe" her removal is not reasonably foreseeable. *Zadvydas*, 533 U.S. at 701.

Diaz meets her burden. Diaz has requested multiple custody reviews since her original detention. [DE 1 at 5]. She has either received a response in a language she does not speak, or no response at all. [*Id.*]. Diaz has requested the following custody reviews: (1) On May 16, 2025; (2) July 7, 2025; (3) September 4, 2025; and (4) October 9, 2025. [*Id.*]. On December 11, 2025, Diaz was provided a document in English, which she does not speak, to alert her she was being transferred to Louisiana. [*Id.*]. Petitioner's counsel, who is also her guardian, was not notified.

4

[*Id.*]. After being notified of her transfer to Louisiana, Diaz's counsel contacted ICE for an explanation and requested all documents and information relating to the transfer. [*Id.*]. Subsequently, ICE transferred Diaz back to the Chicago Field Office Jurisdiction. [*Id.*]. But although Diaz was returned, no documents regarding the transfer, or purpose of the transfer, were provided to counsel. [*Id.*]. Diaz's guardian and counsel has also reached out to ICE on multiple occasions for a status update on her removal, but those inquiries were left unanswered until ICE notified Diaz of her potential removal to the DRC, discussed above. [DE 13 at 55-56].

Diaz has been placed in withholding only proceedings which prevents removal to her home country, making removal more difficult and less foreseeable. *Rodriguez Romero v. Ladwig,* -- F. Supp. 3d --, 2026 WL 321437 *14 (M.D. La. Feb. 6, 2026) (holding that when a Petitioner demonstrates that removal to their home country is not practical, that is a "good reason to believe" that the Petitioner is "not likely to be removed in the reasonably foreseeable future"). And although ICE has recently located a potential third country, DRC, the Court held that ICE had likely violated Diaz's due process rights in attempting to execute such a removal. [DE 20 at 97]. ICE's attempts to reach out and coordinate a removal to a third party country, one which Diaz has no connections to, does not demonstrate a reasonable foreseeability of removal. *Gurung v. Warden,* 2026 WL 93145, *7 (W.D. Tex. Jan. 6, 2026) (ordering release of Petitioner pursuant to *Zadvydas* after ICE had failed to removal petitioner to an identified third party country). And specific to Diaz, her removal is more complicated because, the "law is undeveloped, however, with regard to the particular demands of 'fundamental fairness' in removal proceedings against a potentially incompetent alien." *Mohamed v. TeBrake*, 371 F. Supp. 2d. 1043, 1045 (D. Minn. 2005). The Court recognizes that mental incompetency is not a bar to deportation. *Reid v. Bondi,* 132 F.4th 109, 115 (2d Cir. 2024) (citing *Matter of M-A-M,* 25 I. &N. Dec. 474 (B.I.A. 2011). But ICE has not established that it is seriously considering Diaz's mental condition in its removal process at

any step. And although the amount of protection may differ by administration, ICE must still comply with a "rigorous procedural framework" in removing an incompetent non-citizen. *Reid,* 132 F.4th at 122; U.S. IMMIGR. & CUSTOMS ENF'T, *ICE Announces New Policies Strengthening Protections for Detained Noncitizens with Mental Disorders* (Apr. 11, 2022), https://www.ice.gov/news/releases/ice-announces-new-policies-strengthening-protections-detained-noncitizens-mental; *see also,* EXEC. OFF. FOR IMMIGR. REV*., Department of Justice and the Department of Homeland Security Announce Safeguards for Unrepresented Immigration Detainees with Serious Mental Disorders or Conditions* (Apr. 22, 2013), https://www.justice.gov/eoir/notice-safeguards-unrepresented-immigration-detainees

The United States has had over 31 months in total, and over a year since Diaz's order of removal became final, to plan and execute her removal from the United States. And as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' necessarily shrinks." *Lopez,* 2026 WL 1370583, at *12 (quoting *Zadvydas,* 533 U.S. at 701). And conversely this also requires the government to a show more immediate prospect of removal. *Al-Sadoon v. Lynch,* 586 F. Supp. 3d 713, 726 (E.D. Mich. 2022). Thus, the United States has had ample time to remove Diaz but has failed to do so. Accordingly, Diaz has met her burden to demonstrate that she is unlikely to be removed in the foreseeable future. *See Pham v. Raycraft,* 2026 WL 1673819, *2-*3 (W.D. Mich. June 10, 2026) (granting *Zadvydas* relief when Petitioner is a member of a group systematically subjected to discrimination); *see also, Trunge LE v. Goodnough,* 2026 WL 879295, *5 (E.D. Mich. Mar. 31, 2026) (granting *Zadvydas* relief when Petitioner could not be sent back to his home country).

The burden now shifts to Respondents. *Id.* At first, ICE attempted to remove Diaz to Mexico. [DE 9 at 39]. ICE states that "Petitioner's removal is still significantly likely to occur because she remains capable of being removed." [DE 9 at 40]. But the only evidence ICE provides

is a "Notice of Removal." [DE 9-2 at 47]. ICE has not provided any communications between the United States and Mexico, nor has stated that any exist. Thus, "the record before record before the Court does not indicate that ICE has communicated with the Government of [Mexico] about Petitioner, let alone that the Government of [Mexico] recognizes Petitioner or has any intention of issuing [her] a travel document." *Pham,* 2026 WL 1673819, *3. At some point, ICE abandoned removal of Diaz to Mexico. [DE 18-1 at 78]. ICE did so without notice to Diaz nor her guardian and counsel.

After the attempt to remove Diaz to Mexico did not work out, ICE allegedly contacted Switzerland for a possible removal. [DE 18-1 at 78]. Switzerland rejected Diaz "due to a lack of ties with the county." [*Id.*]. More recently, Respondents attempted to remove Diaz to the DRC. [DE 17]. And in assessing the foreseeability of a Petitioner's removal "to a third country, it is worth considering the procedural requirements governing a noncitizen's removal to a third country." *Gurung v.,* 2026 WL 93145, *7. Previously, this Court found the procedures ICE attempted to use in Diaz's removal to the DRC likely violated Diaz's due process rights and ordered a TRO to prevent her removal. [DE 20 at 98]. In response to the TRO, ICE stated that Diaz "will be considered again for removal to the DRC and other third countries." [DE 21 at 104]. But ICE provides no evidence nor concrete statements with the DRC, or any third party country, demonstrating their acceptance of Diaz. *See Pham,* 2026 WL 1673819, *3; *Zadvydas,* 533 at 701 ("the Government *must respond with evidence* sufficient to rebut that showing" (emphasis added). And although Mexico and the DRC may have accepted non-citizens in the past, that does not mean they will in the future. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 415 (6th Cir. 2003) (finding no significant likelihood of removal in the reasonably foreseeable future where the named petitioners were not on the "list of persons to be returned."). Thus, it appears to the Court that Diaz's removal is not imminent, but in fact, again in its early stages as no additional county has

been identified for her removal. As a result, Respondents have failed to demonstrate that Diaz is likely to be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see also Villanueva v. Tate,* 2025 WL 277461, *7 (S.D. Tex. Sept. 26, 2025) (granting *Zadvydas* relief after multiple failed attempts to remove Petitioner to different countries, and ICE had not provided any new evidence suggesting removal was likely in the reasonably foreseeable future).

### B.    Release Conditions

Because Diaz's continued detention violates *Zadvydas*, the Court grants the Writ of Habeas Corpus and orders Diaz's immediate release. *See Zadvydas*, 533 U.S. at 699-700 (holding that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Still, in *Zadvydas,* the Supreme Court stated that in the event a district court orders release from custody, the "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* The Immigration and Nationality Act, and its corresponding regulations, provide guidance for imposing release conditions. *See* 8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.4(j). The released noncitizen must "obey reasonable written restrictions on [their] conduct or activities" that the Homeland Security Secretary "prescribes for [them]." 8 U.S.C. § 1231(a)(3)(D). The Court is unaware if Diaz was subject to any conditions prior to her detention. If so, Diaz shall be subject to any preexisting conditions. *Trung LE,* 2026 WL 879295, at *6. If not, Diaz shall be subject to any conditions the Homeland Security Secretary deems appropriate in accordance with the requisite statutory and regulatory guidelines.

### III.    Conclusion

Accordingly, Diaz's *Zadvydas* claim is **GRANTED**. Diaz shall be immediately released from custody. Diaz shall be subject to any preexisting conditions of release, or any other conditions in accordance with 8 U.S.C. § 1231(a)(3); *see also* 8 C.F.R. § 241.4(j). For the above reasons, the

8

Court **GRANTS** Diaz's Petition for Writ of Habeas Corpus [DE 1]. Respondents shall file a notice

on the docket by **June 26, 2026**, to notify the Court of compliance.

Rebecca Grady Jennings, District Judge

United States District Court

June 25, 2026